UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERNEST L. BROCKMAN,

      Petitioner,

                                      CASE NO. 2:08-CV-10310
v.                            JUDGE BERNARD A. FRIEDMAN
                                      MAGISTRATE JUDGE PAUL J. KOMIVES

THOMAS K. BELL,

      Respondent.[1]
_____/

## REPORT AND RECOMMENDATION

I.    RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus. The Court should also deny petitioner a certificate of appealability.

II.    REPORT:

A.    *Procedural History*

    1.    Petitioner Ernest L. Brockman is a state prisoner, currently confined at the Gus Harrison Correctional Facility in Adrian, Michigan.

    2.    On September 21, 2005, petitioner was convicted of second degree murder, MICH. COMP. LAWS § 750.317; operating with a suspended/revoked licence causing death, MICH. COMP. LAWS § 257.904(4); receiving and concealing stolen property of $1,000 or more but less than $20,000, MICH. COMP. LAWS § 750.535(3)(a); and first degree fleeing and eluding, MICH. COMP. LAWS § 257.602a(5), following a bench trial in the Wayne County Circuit Court. The trial court subsequently vacated the fleeing and eluding conviction on double jeopardy grounds. On October

---

    [1]By Order entered this date, Thomas K. Bell has been substituted in place of Debra Scutt as the proper respondent in this action.

14, 2005, he was sentenced as a fourth habitual offender to concurrent terms of 13½-45 years' imprisonment on the murder conviction, 10-15 years' imprisonment on the suspended/revoked licence conviction, and 3-5 years' imprisonment on the receiving stolen property conviction.

3. Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claim:

> DEFENDANT'S DUE PROCESS RIGHTS HAVE BEEN VIOLATED WHERE THERE WAS INSUFFICIENT EVIDENCE TO CONVICT DEFENDANT BEYOND A REASONABLE DOUBT ON THE CHARGE OF SECOND-DEGREE MURDER.

The court of appeals found no merit to petitioner's claim, and affirmed his conviction and sentence. *See People v. Brockman*, No. 266364, 2007 WL 397225 (Mich. Ct. App. Feb. 6, 2007) (per curiam).

4. Petitioner sought leave to appeal this issue to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Brockman*, 478 Mich. 929, 733 N.W.2d 46 (2007).

5. Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on January 22, 2008. As grounds for the writ of habeas corpus, he raises the sufficiency of the evidence claim that he raised on direct appeal.

6. Respondent filed his answer on August 28, 2008. He contends that petitioner's claim is without merit.

B. *Factual Background Underlying Petitioner's Conviction*

Petitioner's convictions arise from a high-speed police chase in which petitioner's vehicle struck another vehicle and killed the occupant. The evidence adduced at trial was accurately summarized in petitioner's brief to the Michigan Court of Appeals:

> The first witness was Southfield Police Officer David McCormick. He was

working on May 12, 2005, with his partner, Jason Schneider. They were watching and eventually they saw a black pickup truck – it had pulled off of Chapel Street at a high rate of speed and headed eastbound on 8 Mile. They tried to stop the vehicle with lights and sirens and it continued to flee. He identified Defendant as the person driving the truck. Speeds were fluctuating between 55 and 75 miles an hour. He made intentional contact with the vehicle, trying to disable the vehicle and prevent further dispute. Unfortunately, due to the size of the vehicle it didn't work and the driver was able to regain control. They were traveling at approximately 70 miles an hour. Defendant was swerving in and out of traffic. Just before Kentfield, Defendant slowed down a bit and the gap was closing considerably. Defendant made a right turn on Kentfield northbound. He was a good twenty car lengths or so behind Defendant when he made the corner. Kentfield is a residential street. They got probably two blocks down Kentfield and then at that point there was a collision. He told his partner that it looked like Defendant was going to bail, meaning that he was going to stop the vehicle and jump out on foot. The speed limit was 25 miles an hour. He estimated Defendant was going 65 to 75 miles an hour. He never saw the other car – he thought Defendant hit a parked car on the side of the road. There was a big cloud of dust, the vehicle spun, and the passenger got ejected out of the vehicle. As the vehicle continued to spin, the driver was ejected out of the vehicle. Both of them got up and ran. They stopped their vehicle and went after the two people that were fleeing on foot.

On cross-examination, he testified that one of the people in the Narcotics Unit called them to stop the vehicle. He had no specific information that there was a firearm or that anyone was armed and dangerous. All he knew was that he was told that there was a narcotics transaction and that the truck was stolen. The truck appeared to stop on Kentfield. It slowed down to such a point that he thought that people were going to bail out of the vehicle. That happened at least twice on Kentfield. After the second time it appeared that it was going to stop, the vehicle accelerated and then spun shortly thereafter.

The next witness was Southfield Police Officer Jason Schneider. On May 12, 2005, he was riding as a passenger with Officer McCormick. They were in a Crown Vic, semi-marked.

On cross-examination, he testified that he saw the truck slow on Kentfield, but he didn't see it completely stop until it crashed. He can't say exactly how slow it was going or at what speed, but it did slow its speed drastically. He saw the truck slow down just once, maybe twice, on Kentfield.

The next witness was Oakland County Detective Corey Bauman. On May 13, 2005, he was part of a surveillance crew that was performing a controlled purchase of some narcotics from Defendant's brother, Kendale Brockman. He observed the transaction take place between the informant and Kendale Brockman. Kendale left and pulled into a driveway at a residence. A black Dodge Ram arrived. Ernest Brockman was driving that vehicle. Ernest got out of the vehicle, went inside, and then came back outside with Kendale Brockman. They got into the vehicle – Ernest was driving and Kendale was the passenger. They left the address and

3

proceeded north to a gas station on the corner of Chapel. He followed them. He asked for backup when it was determined that the vehicle was stolen. He followed the black truck until it stopped at a gas station located on the southeast corner of 8 Mile Road and Chapel. He pulled in the driveway and parked nose to nose with the suspect vehicle. He was in street clothes and not in uniform. When he pulled in front of that vehicle it was kind of a stand-off for a moment and the occupants began screaming at him and he raised his hand with an intent to cause a bit of confrontation in the hopes that they would exit that vehicle at which point they did. Kendale exited from the front passenger seat and began walking towards him. Ernest began exiting the driver's seat. He exited his vehicle once they were out of the car and identified himself as a police officer, presented his badge and ID, screamed to them that he was the police and stop with their hands up. After he did that, both of them re-occupied the vehicle – Ernest in the driver's seat and Kendale in the passenger's seat. They proceeded to back up. They backed away from him eastward, turned around, and fled north out of the parking lot on 8 Mile Road.

   The next three witnesses were Laronda Person, Officer Arnella Little, and Officer Clarence Trotter. They testified that the pick-up truck had been stolen.

Def.-Appellant's Br. on App., in *People v. Brockman*, No. 266364 (Mich. Ct. App.), at 3-6.

C. *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its

5

decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.  *Sufficiency of the Evidence*

As his only ground for habeas relief, petitioner contends that the evidence adduced at trial was insufficient to prove his guilt beyond a reasonable doubt on the second degree murder charge. Specifically, he contends that the evidence failed to prove the malice element of second degree murder. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.  *Clearly Established Law*

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). Under the pre-AEDPA standard for habeas review of sufficiency of the evidence challenges, "the relevant question is

whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Reviewing courts must view the evidence, draw inferences, and resolve conflicting inferences from the record in favor of the prosecution. *See Neal v. Morris*, 972 F.2d 675, 678 (6th Cir. 1992). In determining the sufficiency of the evidence, the court must give circumstantial evidence the same weight as direct evidence. *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993).

However, under the amended version § 2254(d)(1) a federal habeas court must apply a more deferential standard of review of the state court decision. Thus, the question here is whether the Michigan Court of Appeals's application of the *Jackson* standard was reasonable. *See Gomez v. Acevedo*, 106 F.3d 192, 198-200 (7th Cir. 1997), *vacated on other grounds sub nom. Gomez v. DeTella*, 522 U.S. 801 (1998); *Restrepo v. DiPaolo*, 1 F. Supp. 2d 103, 106 (D. Mass 1998).

While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, *see Jackson*, 443 U.S. at 324, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also*, *Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Thus, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999). Accordingly, it is necessary to examine the elements of murder under Michigan law.

Under Michigan law, the common law crime of murder is defined as second degree murder, and is punishable by up to life imprisonment. *See* MICH. COMP. LAWS § 750.317. To establish

7

second degree murder, the prosecution must show that the defendant killed a human being with malice aforethought. In order to show malice aforethought, the prosecution must establish one of three mental states on the part of the defendant at the time of the killing: (1) intent to kill; (2) intent to commit great bodily harm; or (3) intent to create a very high risk of death or great bodily harm with the knowledge that death or great bodily harm is the probable result. *See People v. Dykhouse*, 418 Mich. 488, 495, 345 N.W.2d 150, 151 (1984); *People v. Aaron*, 409 Mich. 672, 713-14, 299 N.W.2d 304, 319-20 (1980). The malice element of second degree murder may be inferred from the circumstances of the death. *See People v. Werner*, 254 Mich. App. 528, 531, 659 N.W.2d 688, 692 (2002); *People v. Mackey*, 168 Mich. App. 154, 157, 423 N.W.2d 604, 606 (1988).

    2.    *Analysis*

Petitioner contends that the evidence was insufficient to establish that he acted with malice aforethought. He notes that there was no evidence that he acted either with an intent to kill or an intent to commit great bodily harm, and thus the case boiled down to whether he acted with an intent to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm is the probable result. He argues that there was no evidence that he intended to hit the vehicle in which the victim was driving, nor was there evidence that he was even aware that another vehicle was in his path. At most, petitioner argues, the evidence established gross negligence to support an involuntary manslaughter conviction, but not malice aforethought necessary to sustain a second degree murder conviction. The Michigan Court of Appeals rejected petitioner's claim, reasoning:

> The uncontroverted trial testimony revealed that defendant led police on a dangerous high speed chase. Police stopped defendant at a gas station when Detective Corey Bauman parked in front of defendant's truck and asked him to stop and put his hands up. Instead of complying, defendant got back into the truck and sped away. Then, another police vehicle, who had its police lights and sirens activated directed defendant to stop. Despite the officer's attempts to get defendant

> to pull over, defendant drove on for miles in a frantic effort to elude police. Defendant drove in excess of the speed limit, in some instances in gross excess, disobeyed stop signs and red lights and weaved in and out of traffic. Defendant's blatantly dangerous driving caused nearby cars to pull over to the side of the road in an effort to avoid him. Even after an officer intentionally hit defendant's vehicle in order to get him to stop, defendant kept driving. The chase ended when defendant, driving 65 to 70 miles per hour in a residential zone of 25 mile per hour, collided with another vehicle, killing the driver of the other vehicle. Even after colliding with the other vehicle and being ejected from the truck, defendant tried to flee the scene on foot, but was eventually caught. Defendant's actions show recklessness to an extreme degree. Contrary to defendant's assertions, his actions well support a finding of second-degree murder, given that he created and disregarded a substantial risk of death or great bodily harm. . . . Similar cases of vehicular homicide have been considered sufficient to sustain the malice requirement of second-degree murder. *See People v. Vasquez*, 129 Mich.App 691; 341 NW2d 873 (1983) (evidence is sufficient to support second-degree murder where the defendant commandeered a police car, drove away from the police at excessive speeds, disobeyed traffic signals, and drove after nightfall on the main traffic artery of general access). Accordingly, in light of defendant's extremely reckless actions, which resulted in the death of another, there was sufficient evidence to convict him of second-degree murder.

*Brockman*, 2007 WL 397225, at *1, slip op. at 2. The Court should conclude that this determination was reasonable.

Contrary to petitioner's argument that he did not intend to hit the other vehicle or know that it was in his path, the prosecution was not required to show that petitioner intended to cause harm or that he knew he would cause harm. As noted above, under Michigan law malice may be inferred from "the intent to do an act that is in obvious disregard of life-endangering consequences." *People v. Aldrich*, 246 Mich. App. 101, 123, 631 N.W.2d 67, 80 (2001) (internal quotations omitted). Here, there was more than mere evidence of petitioner's poor driving; rather, there was evidence presented which showed "a level of misconduct that [went] beyond that of [reckless] driving." *People v. Goecke*, 457 Mich. 442, 466, 579 N.W.2d 868, 879 (1998). Specifically, the prosecutor presented evidence that petitioner was driving without a valid license at an excessively high rate of speed through residential areas, forced other cars to the side of the road, failed to stop at stop signals and

even when his vehicle was deliberately impacted by one of the pursuing police vehicles. From the evidence discussed above, a rational trier of fact could have concluded that petitioner assisted in "intentionally set[ting] in motion a force likely to cause death or great bodily harm," *Aaron*, 409 Mich. at 729, 299 N.W.2d at 327; *accord People v. Cairns*, 460 Mich. 750, 759, 597 N.W.2d 130, 136 (1999), and thus acted with malice aforethought. The courts have repeatedly found similar circumstances sufficient to establish the malice element of second degree murder under Michigan law. *See People v. Staffney*, No. 244516, 2004 WL 576660, at *1 (Mich. Ct. App. Mar. 23, 2004) (per curiam); *People v. Walker*, No. 185538, 1997 WL 33344909, at *2 (Mich. Ct. App. Sept. 2, 1997); *Vasquez*, 129 Mich. App. at 694-95, 341 N.W.2d at 874; *People v. Goodchild*, 68 Mich. App. 226, 235-36, 242 N.W.2d 465, 470 (1976); *cf. Goecke*, 457 Mich. at 470, 579 N.W.2d at 881 (defendant evaded police, drove at high speed on city's main artery, and narrowly avoided one accident prior to the fatal accident); *Aldrich*, 246 Mich. App. at 123, 631 N.W.2d at 80, *habeas corpus denied sub nom. Aldrich v. Bock*, 327 F. Supp. 2d 743, 763 (E.D. Mich. 2004) (Cleland, J., adopting recommendation of Majzoub, M.J.) (defendant drag racing at excessive speed while intoxicated). The evidence presented was sufficient to establish that petitioner intended to drive recklessly at a high rate of speed in order to evade the police, and because this intentional conduct was in obvious disregard of life-endangering consequences, there was sufficient evidence from which the trier of fact could infer that petitioner acted with malice. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

E.  *Recommendation Regarding Certificate of Appealability*

   1.  *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides

that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2. *Analysis*

If the Court accepts my recommendation, the Court should also conclude that petitioner is not entitled to a certificate of appealability. As explained above, there was no question that petitioner intended to drive in a reckless manner in order to evade the police, and the obvious life-endangering consequences of his driving at excessive rates of speed through residential neighborhoods and failing to obey traffic signals was therefore sufficient to prove that he acted with malice aforethought. In light of the courts' repeated findings of sufficient evidence in similar circumstances, the resolution of this claim is not reasonably debatable. Accordingly, the Court should conclude that petitioner is not entitled to a certificate of appealability.

F. *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claim did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus. If the Court accepts this recommendation, the

Court should also deny petitioner a certificate of appealability.

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives  
PAUL J. KOMIVES  
UNITED STATES MAGISTRATE JUDGE

Dated: 5/14/10

13

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and by electronic means or U.S. Mail on May 14, 2010.

                                    s/Eddrey Butts
                                    Case Manager